UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JENNIFER L. WALKER, | ) | |
| (Social Security No. XXX-XX-1601), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:09-cv-44-WGH-RLY |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 7, 12) and an Order of Reference entered by then-District Judge David F. Hamilton on June 8, 2009 (Docket No. 15).

**I.  Statement of the Case**

Plaintiff, Jennifer L. Walker, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f).  This court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff applied for DIB and SSI on July 10, 2006, alleging disability since August 2, 2005.  (R. 77-85).  The agency denied Plaintiff's application both initially and on reconsideration.  (R. 44-51, 54-59).  Plaintiff appeared and testified at a hearing before Administrative Law Judge Albert Velasquez ("ALJ") on December 18, 2007.  (R. 20-39).  Plaintiff was represented by an attorney; also testifying was a vocational expert ("VE").  (R. 20).  On October 6, 2008, the ALJ issued his opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy.  (R. 10-19).  After Plaintiff filed a request for review, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final decision of the Commissioner.  (R. 1-3).  20 C.F.R. §§ 404.955(a), 404.981.  Plaintiff then filed a Complaint on March 26, 2009, seeking judicial review of the ALJ's decision.

## II.  Statement of the Facts

### A.  Vocational Profile

Plaintiff was 27 years old at the time of the ALJ's decision and had a high school education.  (R. 18).  Her past relevant work experience included work as a cashier/stock person, janitor, teller, and café server.  (R. 18).

### B.  Medical Evidence

#### 1.  Plaintiff's Mental Impairments

Plaintiff saw her treating physician, Daniel A. Walters, M.D., on September 7, 2005, complaining of frequent panic attacks, anxiety, and depression.  She

complained that she felt nervous, isolated herself, and cried over nothing. Dr. Walters characterized her symptoms as moderate. (R. 253, 257). She saw Dr. Walters again on November 22, 2005, and noted that her crying spells and feelings of isolation were better. (R. 255). On December 21, 2005, Dr. Walters noted that Plaintiff's depression was better, but she still experienced anxiety and panic. (R. 261). On January 25, 2006, Dr. Walters noted that Plaintiff was offered counseling or psychiatric treatment, but she declined, indicating that she was unable to afford it. (R. 264). An office note from September 20, 2007, indicated that Plaintiff was still dealing with anxiety and depression. (R. 287).

### 2. Plaintiff's Physical Impairments

Plaintiff underwent emergency room treatment on August 10, 2005, because of back pain. (R. 168-79). Sensation and motor strength in the lower extremities was normal and bilateral straight leg raising was reduced. Back motion was decreased, and there was muscle spasm. (R. 171).

Plaintiff underwent emergency room treatment on March 23, 2006, because of back pain. (R. 239-46). She had aggravated her back while lifting a 30 pound bag of cat food two days earlier. (R. 243). There were no reflex or sensory deficits in the lower extremities, motor strength was intact, and straight leg raising was normal. (R. 244).

On March 28, 2006, Plaintiff reported to Dr. Walters' office that her back was hurting again and that her Ultram was of no help. (R. 158). A nurse told Plaintiff that narcotics were not to be prescribed for back strain. Plaintiff needed

further physical therapy and x-rays for further evaluation first, which she had declined in the past; it was noted that she again declined further testing.  (R. 158).

Lumbar spine x-rays taken on April 28, 2006, were normal.  (R. 252).

Plaintiff underwent emergency room treatment on May 7, 2006, because of back pain.  (R. 162-67, 225-36).  Plaintiff refused an x-ray.  (R. 164, 233). Plaintiff had a normal gait, there were no reflex or sensory deficits, motor strength was intact, and straight leg raising was positive (reduced) on the right. (R. 232).

Plaintiff underwent MRI of the lumbar spine on May 12, 2006.  (R. 266). There was left paracentral disc extrusion with extruded disc material displacing the descending left S1 nerve root.  (R. 266).  Dr. Walters noted on May 15, 2006, the MRI exam results which revealed L5-S1 left disc displacement with displacement of the left S1 nerve.  (R. 196).

John B. Chambers, M.D., Plaintiff's surgeon, saw Plaintiff on May 18, 2006, with several months history of leg pain which Dr. Chambers opined was a classic description of sciatica.  (R. 267).  Plaintiff could flex forward and touch the floor without difficulty, and left and right rotation were not significantly limited.  (R. 267).  There was weakness in the calf, reflexes at the left ankle were reduced, and there was full motion of all extremities.  (R. 267).  A neurological exam showed a S1 radicular pattern to her pain.  X-rays showed a disc

herniation at L5-S1 with a free fragment.  After a discussion of treatment options, Plaintiff declined surgery.  (R. 267).

Dr. Walters saw Plaintiff on June 30, 2006.  (R. 223-24).  Plaintiff had a herniated disc at L5-S1, and she was oriented.  (R. 224).  Dr. Walters opined Plaintiff was unable to work because of the herniated disc.  (R. 224).

On July 10, 2006, Dr. Walters completed a report for Indiana Medicaid disability.  (R. 216-22).  Plaintiff had a herniated disc at L5-S1 with nerve root impingement.  (R. 219-20).  Plaintiff required surgery (a lumbar micro discectomy) for nerve root decompression, but had no insurance.  (R. 217, 221).  Plaintiff was unable to stand for more than ten minutes at a time, and she had to change positions frequently.  (R. 217).  Dr. Walters opined Plaintiff was totally disabled, but after surgery it was expected that Plaintiff would be able to return to work.  (R. 221).

Notes from Dr. Walters' office on August 17, 2006, indicated that Plaintiff needed back surgery, but was waiting on Medicaid; an August 22, 2006 notation indicated that Plaintiff's Medicaid application was denied.  (R. 316).

On December 6, 2006, the Indiana Family & Social Services Administration determined Plaintiff was disabled and, therefore, eligible for Medicaid.  (R. 372-77).

On January 8, 2007, Plaintiff saw Dr. Chambers with complaints of pain in her hip and left leg; her pain had somewhat improved, but not abated.  (R. 355).  Plaintiff was neurologically intact.  (R. 355).  On January 29, 2007,

Plaintiff was neurologically intact.  (R. 354).  Dr. Chambers discussed the options for Plaintiff's disc herniation at L5-S1, and she opted to go with surgery. (R. 354).

On January 11, 2007, Plaintiff underwent another MRI exam of the lumbar spine.  (R. 336).  It was noted that, compared to the previous MRI exam, there was a significant decrease in the size of the disc protrusion at L5-S1, but the disc protrusion was still affecting the left S1 nerve root.  (R. 336).

On February 20, 2007, because of a herniated disc, Plaintiff underwent a lumbar discectomy at L5-S1 that was performed by Dr. Chambers.  (R. 366-70). Plaintiff was ambulatory postoperatively and was discharged.  (R. 370).

On March 5, 2007, Dr. Chambers noted that Plaintiff was "doing much better clinically after discectomy," she was "doing well," and was neurologically intact.  (R. 353).

On March 26, 2007, Dr. Chambers noted that Plaintiff was "doing relatively well clinically."  (R. 352).  Plaintiff had some buttock pain, which was to be expected, and for which Dr. Chambers gave Plaintiff medication.  (R. 352).

Plaintiff underwent Electromyographic (EMG) and nerve conduction studies of the left lower extremity on August 22, 2007.  (R. 341-42).  The results were minimally abnormal with a suggestion of chronic or old left S1 radiculopathy.  Robert J. Buell, M.D., referred to these as "fairly benign results." (R. 342).

Dr. Walters completed a "Residual Functional Capacity Form" on September 29, 2007.  (R. 280-85).  Plaintiff could only lift and carry up to ten pounds for five to ten minutes and could not do frequent lifting and carrying.  (R. 280).  She could only stand or walk for 30 minutes and then would need to sit or lie down; could sit for 60 minutes and then change positions; lie down as needed to relieve the symptoms; rarely twist at the trunk or climb; never stoop, bend at the waist, crouch, or crawl; rarely use her arms to push and pull and reach overhead; and rarely use her legs to operate foot controls.  (R. 281-82).  Plaintiff would have difficulty with any task requiring frequent ambulation and significant exertion.  (R. 283).  Plaintiff also had mental limitations or symptoms of depression; feelings of guilt/worthlessness; difficulty concentrating or thinking; generalized anxiety; sleep disturbance; emotional lability; decreased energy; and recurrent panic attacks.  (R. 283-84).  Plaintiff would have extensive absences from work because of her mental problems alone.  (R. 284).  Plaintiff did not have significant difficulty getting along with co-workers or peers without distracting them, and she did not have significant difficulty understanding, remembering, and carrying out short, simple instructions.  (R. 285).

On June 30, 2008, Dr. Walters wrote a letter stating that the February 2007 surgery resolved Plaintiff's buttock and back pain, but that her left leg pain persisted.  Dr. Walters opined Plaintiff was disabled and that her condition is not likely to improve.  (R. 458).

### 3.  State Agency Review

In August 2006, F. Lavallo, M.D., a State agency physician, reviewed Plaintiff's medical record and assessed Plaintiff's ability to work.  (R. 270-77). Plaintiff could lift/carry 20 pounds occasionally and ten pounds frequently, stand and/or walk six hours, and sit six hours.  (R. 271). Plaintiff could occasionally climb ladders, ropes, and scaffolds and crawl; she could frequently climb ramps and stairs, balance, stoop, kneel, or crouch.  (R. 272).

## III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner.  *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that Plaintiff was insured for DIB through March 31, 2009.  (R. 12).  The ALJ continued by finding that, in

accordance with 20 C.F.R. § 404.1520, Plaintiff had four impairments that are classified as severe:  degenerative disc disease of the lumbar spine, obesity, anxiety, and depression.  (R. 12).  The ALJ concluded that none of these impairments met or substantially equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 13).  The ALJ then found that Plaintiff retained the following RFC:  (1) she can occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; (2) she can sit, stand, and walk six hours in an eight-hour workday; (3) she can push/pull up to 20 pounds; (4) she can only occasionally balance, stoop, kneel, crouch, or crawl; (5) she can occasionally climb stairs or ramps, but never climb ropes, ladders, or scaffolds; (6) she should not operate a motor vehicle, work around unprotected heights, dangerous moving machinery, open flames, or large bodies of water; and (7) she is limited to simple repetitive tasks.  (R. 15).  The ALJ determined that, based on this RFC, Plaintiff could not perform any of her past work.  (R. 18).  However, given Plaintiff's RFC, the ALJ determined that there were a significant number of jobs that Plaintiff could perform in the national and regional economy.  (R. 18).  The ALJ, therefore, concluded that Plaintiff was not under a disability.  (R. 19).

## VI.  Issues

Plaintiff has raised five issues.  The issues are as follows:

1. Whether the ALJ's credibility determination was flawed.

2. Whether Dr. Walters' opinions were entitled to controlling weight.

3. Whether Plaintiff's mental impairments met a listing.

4.   Whether the ALJ erred by disregarding Plaintiff's Medicaid decision.

5.   Whether the ALJ's RFC assessment is supported by substantial evidence.

**Issue 1:     Whether the ALJ's credibility determination was flawed.**

Plaintiff's first argument is that the ALJ conducted an improper determination of the credibility of her allegations regarding her limitations and complaints of pain.  An ALJ's credibility determination will not be overturned unless it is "patently wrong."  *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000).  However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain.  Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms.  The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms.  If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration,

frequency, and intensity of the individual's pain or other symptoms; (3) factors
that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness,
and side effects of any medication the individual takes or has taken to alleviate
pain or other symptoms; (5) treatment, other than medication, the individual
receives or has received for relief of pain or other symptoms; (6) any measures
other than treatment the individual uses or has used to relieve pain or other
symptoms; and (7) any other factors concerning the individual's functional
limitations and restrictions due to pain or other symptoms.  20 C.F.R. §
404.1529(c)(3)(i)-(vii).

Here, the ALJ conducted an extremely thorough examination of Plaintiff's
credibility as follows:

> In considering the claimant's symptoms, I must follow a two-step
> process in which it must first be determined whether there is an
> underlying medically determinable physical or mental
> impairment(s)--i.e., an impairment(s) that can be shown by
> medically acceptable clinical and laboratory diagnostic techniques--
> that could reasonably be expected to produce the claimant's
> pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that
> could reasonably be expected to produce the claimant's pain or
> other symptoms has been shown, I must evaluate the intensity,
> persistence, and limiting effects of the claimant's symptoms to
> determine the extent to which they limit the claimant's ability to do
> basic work activities.  For this purpose, whenever statements about
> the intensity, persistence, or functionally limiting effects of pain or
> other symptoms are not substantiated by objective medical evidence,
> I must make a finding on the credibility of the statements based on
> a consideration of the entire case record.

At the hearing, the claimant testified that she continues to experience chronic low back that radiates down to the left thigh. She also stated that she has numbness, tingling, and muscle twitches in the left thigh. She is reportedly unable to leave her home due to pain. She stated that she spends her days alternating between lying down and sitting. In describing the symptoms of her mental impairments, the claimant said that she is easily upset. Medication has decreased her symptoms but she continues to be depressed.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

In terms of the claimant's alleged physical symptoms, the objective evidence does not substantiate the extreme symptoms to which she testified. Physical examinations performed before and after the claimant's lumbar discectomy showed few clinical deficits. During a clinical examination in May 2006, she had full motor strength throughout and was able to forward flex, touch the floor, and extend without much difficulty. Her left rotation and lateral bend were not significantly limited (Exhibit 7F at 7). An MRI performed one month prior to her surgery showed a significant decrease in the size of the disc protrusion and effect upon the nerve root (Exhibit 7F at 8). Follow-up progress reports note that the claimant was doing well clinically after surgery. In August 2007, an EMG of the left lower extremity showed only minimal abnormalities (Exhibit 7F at 2-3; Exhibit 9F at 4-5). The following month (September 2007), Kenneth Bobb, M.D., another of the claimant's treating physicians, described her symptoms as "mild to moderate" (Exhibit 6F at II). The record contains no further evidence of the claimant's evaluation or treatment for her back impairment.

As for the claimant's mental impairments, the record shows that her symptoms have improved with medication. During the hearing, she acknowledged that medication has improved her psychological symptoms. She has also told physicians that her panic disorder is much better and her depression is stable (Exhibit 6F at 15).

> While I do not doubt that the claimant may experience some
> symptoms associated with her physical and mental impairments, I
> do not find her entirely credible as to the limitations on her daily
> living activities.  According to the claimant, she is unable to leave
> her home due to pain.  She reportedly performs little household
> chores and spends her [time] alternating between sitting and lying
> down.  Treatment notes indicate that she engages in more activities.
> In March 2006, she reportedly exacerbated her symptoms after
> lifting a 30 pound bag of cat food (Exhibit 4F at 28).
>
> In September 2007, the claimant's physician noted no limitations in
> her ability to perform household activities (Exhibit 6F at 11).
> Overall, this evidence shows that the claimant has the capacity [to]
> perform at a higher exertional level than she alleges.  No
> precipitating and aggravating factors are noted in the record.  There
> is no evidence of adverse medication side effects.  Treatment other
> than medication has consisted of a discectomy in February 2007.
> No other treatment measures are documented.

(R. 15-17).  This analysis was completely consistent with SSR 96-7p and 20

C.F.R. § 404.1529(c)(3).  Plaintiff's allegations that she is severely limited, as well

as her complaints of pain, are simply not supported by the objective medical

evidence.  The ALJ recognized this and examined each of the seven factors listed

in § 404.1529(c)(3).  The ALJ reasonably determined that, based on these

factors, Plaintiff was not entirely credible.  The court specifically notes that

Plaintiff has not undergone any treatment for her alleged symptoms (beyond

pain medications) since her discectomy.  Additionally, Plaintiff alleges that she

suffers from mental impairments, but she failed to undergo any mental health

treatment in the nearly two years since she was approved for Medicaid.

Consequently, the ALJ's credibility decision is supported by substantial evidence

and clearly not patently wrong.

**Issue 2:     Whether Dr. Walters' opinions were entitled to controlling weight.**

Plaintiff also argues that the ALJ erred when he failed to give controlling weight to the opinions of her treating physician, Dr. Walters.  Opinions of a treating physician are generally entitled to controlling weight.  *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).  However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record.  *Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001).  Additionally, 20 C.F.R. § 404.1527 provides guidance for how the opinions of treating and nontreating sources are to be evaluated and explains as follows:

> (d)  *How we weigh medical opinions.*  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1)  *Examining relationship.*  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2)  *Treatment relationship.*  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) *Supportability.* The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4)  *Consistency.*  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5)  *Specialization.*  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6)  *Other factors.*  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

*****

(f)  *Opinions of nonexamining sources.*  We consider all evidence from nonexamining sources to be opinion evidence.  When we consider the opinions of nonexamining sources, we apply the rules in paragraphs (a) through (e) of this section.  In addition, the following rules apply to State agency medical and psychological consultants, other program physicians and psychologists, and medical experts we consult in connection with administrative law judge hearings and Appeals Council review:

(1)  In claims adjudicated by the State agency, a State agency medical or psychological consultant (or a medical or psychological expert (as defined in § 405.5 of this chapter) in claims adjudicated under the procedures in part 405 of this chapter) will consider the evidence in your case record and make findings of fact about the medical issues, including, but not limited to, the existence and severity of your impairment(s), the existence and severity of your symptoms, whether your impairment(s) meets or equals the requirements for any impairment listed in appendix 1 to this subpart, and your residual functional capacity.  These

administrative findings of fact are based on the evidence in your
case record but are not themselves evidence at these steps.

20 C.F.R. § 404.1527.

The circumstances here demonstrate that Dr. Walters' extreme limitations
were not entitled to controlling weight, and the ALJ's decision is, therefore,
supported by substantial evidence.  Dr. Walters opined that Plaintiff could lift no
more than ten pounds and could rarely use her arms to push or pull.  Yet, the
objective medical evidence reveals absolutely no upper extremity deficits.
Additionally, Dr. Walters opined that Plaintiff would miss significant amounts of
work because of mental impairments.  However, there is no objective medical
evidence concerning Plaintiff's mental health.  There were no mental status
examinations, no GAF scores, and no other objective basis for finding that
Plaintiff was mentally impaired.  Dr. Walters' opinions appear to be entirely
based on Plaintiff's subjective complaints about her mental health.  Finally, Dr.
Walters' opinions about Plaintiff's ability to sit/stand/walk are contradicted by
the normal results found by Plaintiff's surgeon after her back surgery, are not
supported by the objective medical evidence, and are even inconsistent with the
opinions of State agency physicians who evaluated Plaintiff using all of the
objective medical evidence obtained solely *before* her surgery.  Plaintiff
underwent an EKG and nerve conduction studies which revealed mildly
abnormal results.  Otherwise, there are no results which demonstrate such

extreme limitations in Plaintiff's RFC.  Therefore, Dr. Walters' opinions were not entitled to controlling weight.

**Issue 3:**      **Whether Plaintiff's mental impairments met a listing.**

Additionally, Plaintiff finds fault in the ALJ's analysis of her mental impairment.  Specifically, Plaintiff alleges that the ALJ committed error by not concluding that Plaintiff's impairment met Listing 12.04.  In order to meet Listing 12.04, an individual must either meet the requirements of subsections A and B or the requirements of subsection C of Listing 12.04.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  In this case, Plaintiff does not argue that the C criteria are met.  Therefore, Plaintiff must demonstrate that Plaintiff's mental impairment is severe enough that it meets the B criteria of Listing 12.04.  Specifically, Plaintiff must demonstrate:

> B.  . . . at least two of the following:
>
> 1.  Marked restriction of activities of daily living; or
>
> 2.  Marked difficulties in maintaining social functioning; or
>
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4.  Repeated episodes of decompensation, each of extended duration; . . . .

*Id.*

Plaintiff has simply failed to demonstrate any objective medical evidence that demonstrates that she met Listing 12.04.  No doctors have opined that Plaintiff suffered episodes of decompensation.  Hence, Plaintiff must demonstrate

objective medical evidence that she is "markedly" limited in two of the areas

listed above.  However, no mental health expert has opined that Plaintiff suffers

from the requisite number of marked limitations noted in these listings; the

actual evidence concerning Plaintiff's mental impairment reveals much less

severe restrictions than those required to meet any of these listings.  Because

Plaintiff has failed to point to specific medical evidence to support a finding that

she met the B criteria of Listing 12.04, the court concludes that this portion of

the ALJ's decision is supported by substantial evidence and must be affirmed.

**Issue 4:      Whether the ALJ erred by disregarding Plaintiff's Medicaid decision.**

Plaintiff also finds fault in the ALJ's decision to disregard the findings

concerning her application for Medicaid benefits.  On December 6, 2006, the

Indiana Family & Social Services Administration determined that Plaintiff was

disabled and, therefore, eligible for Medicaid.  (R. 372-77).  "Determinations of

disability by other agencies do not bind the Social Security Administration . . . ."

*Allord v. Barnhart,* 455 F.3d 818, 820 (7th Cir. 2006).  Social Security Ruling 06-

03p provides that even though the SSA is not bound by the disability

determinations of other government agencies, "the adjudicator should explain

the consideration given to these decisions in the notice of the decision for

hearing cases."  SSR 06-03p.

The ALJ, in this case, analyzed Plaintiff's Medicaid decision as follows:

> The claimant submitted a Medicaid Notice of Hearing Decision dated December 2006 in which a State Administrative Law Judge found that she met the disability requirements for medical assistance under the Indiana Medicaid Program.  The facts and standards considered in the State Administrative process are distinct from the evidence and rules applied in a Social Security Administration proceeding.  Therefore, the findings reflected in the Medicaid Hearing Decision are not entitled to consideration in relation to the claimant's disability claims filed under the Social Security Administration Act.

(R. 17).  The ALJ, therefore, acknowledged the decision of the Indiana Family & Social Services Administration and reasonably determined that it was not binding.  The court notes that the ALJ's decision to grant no weight to Plaintiff's Medicaid decision is supported by substantial evidence because Plaintiff was awarded Medicaid benefits *prior* to her back surgery.  The ALJ decided that, based on objective medical evidence available after her back surgery, Plaintiff was not disabled.  These were two unique decisions that relied on different objective medical evidence, and the ALJ's decision is, therefore, affirmed.

**Issue 5:     Whether the ALJ's RFC assessment is supported by substantial evidence.**

Finally, Plaintiff argues that the ALJ asked incomplete hypothetical questions to the VE because the questions did not include all of Plaintiff's limitations.  However, the ALJ's hypothetical questions incorporated all of the limitations included in the ALJ's assessment of Plaintiff's RFC.  Thus, the real questions is:  Is the ALJ's RFC assessment supported by substantial evidence?  The ALJ reasonably took into consideration all of Plaintiff's impairments in assessing Plaintiff's RFC.  The ALJ limited Plaintiff to a reduced range of light

work based on the "residuals of the claimant's discectomy," which is a rather limited RFC for someone who was only 27 years old at the time of the ALJ's decision.  The ALJ also reasonably accommodated Plaintiff's mild mental impairments by limiting her to simple repetitive tasks.  No objective medical evidence points to a more limited mental or physical RFC than that provided by the ALJ.  Hence, the ALJ's decision is supported by substantial evidence, and his RFC findings are affirmed.

## VII.  Conclusion

The ALJ's decision is supported by substantial evidence.  The ALJ's assessment of Plaintiff's credibility was not patently wrong.  The ALJ also did not err when he failed to give controlling weight to the opinions of Dr. Walters.  Additionally, Plaintiff has failed to demonstrate that his mental impairment satisfied all of the B criteria of Listing 12.04.  And, the ALJ was not obligated to give any significant weight to Plaintiff's Medicaid decision.  Finally, the ALJ's RFC findings are well supported by the objective medical evidence.  The decision of the Commissioner of the Social Security Administration is **AFFIRMED.**

**SO ORDERED** this 25th day of March, 2010.


_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**<u>Electronic copies to</u>:**

Steven K. Robison
MONTGOMERY ELSNER & PARDIECK
srobison@meplegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov